# UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### SPRINGFIELD DIVISION

|  |  |
|---|---|
| In Re: ) | |
| ) | **CHAPTER 7** |
| POLISH-AMERICAN CITIZENS ) | |
|  CLUB, INC. OF WILLIMANSETT, ) | **CASE NO: 21-30357-EDK** |
| MASSACHUSETTS ) | |
| ) | |
|   **Debtor** ) | |
| ) | |
| **Matthew Roman, Stanley Gromacki Jr.,** ) | |
| **June Massee, Mitchell Nowak,** ) | |
| **Marian Zielenski, Elaine Dowd**, ) | |
| **Individually, and in the name of** ) | |
| **The United States of America**, ) | |
|   Plaintiffs, ) | |
| v. ) | **Adversary Proceeding** |
| ) | **Case No. _____** |
| **David Ostrander,** ) | |
|   **In his personal capacity, and** ) | |
|   **In his official capacity as** ) | |
|     **Chapter 7 Trustee, and** ) | |
|   **D/b/a Ostrander Law Office,** and ) | |
| **Liberty Mutual Insurance Company**, ) | |
|   **Defendant**s ) | |
| ) | |

## ADVERSARY COMPLAINT

### Introduction

1. This is an adversary proceeding for a claim on the Chapter 7 trustee bond and for negligence against the trustee of the now-dismissed Chapter 7 petition of a Massachusetts non-profit shareholder corporation, a social club in Chicopee, Massachusetts, brought by six of its creditors and shareholders.

2. During the Chapter 7 proceeding, the Debtor's club building, which was left uninsured and unsecured by the trustee, suffered substantial water damage, extensive mold damage, and theft of business personalty, which was only discovered after the petition was dismissed. The water leak was known by the trustee from the beginning, but he took no action to mitigate or repair it.

3. This complaint also brings a claim for failure to investigate credibly shown theft, conversion, self-dealing and financial mismanagement by the board and officers of the Debtor.

### Jurisdiction and Venue

4. This court has jurisdiction pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, 31 U.S.C. § 9307 (regarding suit on a trustee bond).

5. This matter is a core proceeding under 28 U.S.C. § 157 (b) (2) (A).

6. Plaintiff has standing to bring this action pursuant to 11 U.S.C. § 330 and § 323 and Bankruptcy Rules 2010 and 9025, and 28 U.S.C. § 2201 (Declaratory Judgment).

7. Venue is proper pursuant to 28 U.S.C. § 1409.

### Parties

8. Plaintiffs Matthew Roman, Stanley Gromacki Jr., June Massee, and Marian Zielinski are shareholders and creditors of the former Debtor, Polish American Citizens Club Inc. Of Willimansett, Massachusetts ("Former Debtor" or "Club"), a Massachusetts Chapter 180 shareholder non-profit corporation. They bring this action in their individual capacity and in the name of The United States of America, for purposes of accessing the trustee bond.

9. Plaintiffs Mitchell Nowak and Elaine Dowd are shareholders of the Former Debtor. They bring this action in their individual capacity and in the name of The United States of America, for purposes of accessing the trustee bond.

10. Defendant David Ostrander was the Chapter 7 trustee of the Former Debtor. He is sued in his individual capacity, in his official capacity as Chapter 7 Trustee, and doing business as Ostrander Law Office, as legal counsel to the trustee.

11. Defendant Liberty Mutual Insurance Company is a corporation duly organized under the laws of the state of Massachusetts and is the surety on the Chapter 7 trustee bond.

**Procedural Facts From the Chapter 7 Bankruptcy**

12. The Former Debtor, the Polish American Citizens Club Inc. Of Willimansett, Massachusetts, was incorporated as a shareholder non-profit corporation under Massachusetts General Laws, Chapter 180, in 1927, and has operated continuously in Chicopee, Massachusetts as a Polish social club since that time.

13. The Club funded its operations by revenue-producing businesses such as a bar, Polish restaurant and hall rentals, operating in its building located at 13 Norman Street, Chicopee, Massachusetts.

14. The Former Debtor filed its voluntary Chapter 7 petition on September 21, 2021.

15. Defendant David Ostrander was assigned as the Chapter 7 Trustee.

16. On October 18, 2021, the court granted Mr. Ostrander's motion to employ his own law office as counsel to the trustee.

17. On October 19, 2021, Mr. Ostrander convened a Section 341 Meeting of creditors, at which former club president Dorothy Wojtczak testified, and was asked questions by

undersigned counsel.

18. The Section 341 meeting was suspended and continued, with an order for Ms. Wojtczak to bring certain documents to the next meeting, regarding Club finances and operations.

19. On October 26, 2021, the court granted the Trustee's motion to employ a realtor to sell the Club's building.

20. On November 30, 2021, the court granted the motion of the plaintiffs herein to conduct Rule 2004 examinations of certain officers and directors of the Former Debtor.

21. On March 9, 2022, the plaintiff shareholders filed a motion to dismiss the bankruptcy petition.

22. The court heard testimony on the shareholder's motion over three days.

23. On July 18, 2022, the court granted the shareholder's motion to dismiss the case.

24. Mr. Ostrander filed a motion to reconsider the dismissal, which was denied by this court on September 23, 2022.

25. On September 27, 2022, Mr. Ostrander filed a notice of appeal to the Bankruptcy Appellate Panel, which is currently pending.

**Facts Supporting This Complaint**

*Facts Leading to the Chapter 7 Filing*

26. The Former Debtor owns real estate located at 13 Norman Street in Chicopee, Massachusetts, improved with a building containing a Polish restaurant, a bar, two meeting halls, two kitchens, storage and administrative areas. See Exhibit 1 attached.

27. Prior to Dorothy Wojtczak, ("Dorothy") being elected as president of the Club in February of 2020, the Club brought in about $4,000 in weekly revenue from its various

businesses.

28. Starting in March of 2020, the City of Chicopee placed restrictions on occupancy and business operations due to the COVID pandemic, which reduced the Club's income.

29. The Club was still able to operate on a limited basis, selling "take-out" food, and renting its halls as long as it respected the City's restrictions on capacity.

30. In mid-2020, the City of Chicopee discovered that Dorothy had been exceeding the allowed occupancy limits, and rescinded the Club's certificate of occupancy, food service, and alcohol licenses.

31. In March of 2021, the plaintiffs herein filed a complaint in Hampden Superior Court against the officers and directors of the Club and as a derivative proceeding, based on alleged self-dealing, conversion of club funds, food and liquor, and financial mismanagement of the Club.

32. The defendants in the Superior Court matter, through counsel, allowed the plaintiffs and undersigned counsel to enter and inspect the Club building on May 10, 2021.

33. No water or water damage was observed at that time anywhere in the building.

34. A few days before scheduled depositions of Dorothy and other board members in the Superior Court case, the Debtor filed its Chapter 7 petition, over the signature of Dorothy Wojtczak, staying the Superior Court case.

*Facts Regarding Failure to Investigate Financial and Employment Fraud and Conversion*

35. The initial meeting of creditors in the Chapter 7 case under 11 U.S.C. § 341 was held on October 19, 2021.

36. After testimony of the debtor's president, Dorothy Wojtczak, Trustee Ostrander ordered

Dorothy to produce documents regarding the Club's finances and operation, and he continued the meeting until November 16, 2021 to give her time to produced the required documents.

37. Ostrander cancelled the November 16 meeting and rescheduled it for December 21, 2021.

38. Ostrander cancelled the December 21 meeting and rescheduled it for January 18, 2022.

39. Ostrander cancelled the January 18, 2022 meeting and rescheduled it for March 8, 2022.

40. Ostrander cancelled the March 8 meeting and rescheduled it for May 10, 2022.

41. On May 2, 2022, eight days before the scheduled Section 341 meeting, Ostrander concluded and adjourned it, without waiting until the May 10 date specified in his notice to the parties.

42. No further section 341 meeting was scheduled, and the documents regarding club finances and operation which Ostrander ordered to be produced were never produced by the Club's president.

43. As a result of excusing the president from producing Club documents, the Trustee never investigated credible allegations of fraud, conversion, mismanagement and possible criminal violations by the Club's board and officers.

44. The plaintiffs herein conducted Rule 2004 examinations of Dorothy Wojtczak, the former president, former board members Jordan Klofas and Rachel Ilnicki, and former treasurers Alice Pasterczak, Ronald Schwalm and Kevin Juchno.

45. Trustee Ostrander was able to review the transcripts of these examinations.

46. The examinations identified large sums of Club money as missing, revealed that employees were paid in cash, that employment taxes were not withheld or paid, and that Dorothy did not let the treasurers have access to the financial records of the Club or be

involved in any accounting or banking, among other things.

47. Trustee Ostrander never investigated these matters or required the officers or directors to produce evidence of how at least $70,000 of Club revenue had disappeared in just one year, how much was owed in various taxes, and much else.

48. As a result of failure to investigate this alleged wrongdoing, the Debtor never recovered the money which was converted.

49. The Officers of the Former Debtor had failed to withhold taxes for employees, and did not file employment tax returns, state and federal income tax returns, and meal tax returns.

50. The Trustee did not file any tax returns during this case.

51. For the Trustee to have filed the missing tax returns, he would have had to investigate the amounts paid to employees in cash, amounts owed for withholding and for unpaid social security taxes, amounts owed to the IRS and DOR, amounts for unpaid meal taxes, failure to keep records by the board and the officers of the Former Debtor, which he did not do.

*Facts Regarding Damage to Club Building*

52. On November 4, 2021, six weeks after the Former Debtor filed its Chapter 7 petition, Trustee Ostrander inspected the Club building in Chicopee, and found water in the basement.

53. Trustee Ostrander did not investigate the source of the water leak, or obtain any professional help to identify its source or repair it.

54. The Club kept paper goods for their restaurant and bar and numerous boxes holding beer, wine and liquor in the basement, along with soda and beer with a mechanical mechanism

to feed it to the bar above.

55. Water in the basement was never a problem there, and the club could not have stored paper goods and liquor containers, and the bar feeding machinery there if it was, as it would have ruined them.

56. Five months later, in April of 2022, Ostrander discovered a puddle of water in the second floor auditorium of the Club building.

57. Accumulated water had never been seen in that area before.

58. Ostrander did not investigate the source of the water leak, or obtain any professional help to identify its source or repair it.

59. Even though the court dismissed the Chapter 7 petition on July 18, 2022, Ostrander continued to maintain control of the Club building until October of 2022.

60. In September of 2022, Ostrander once again inspected the Club building, with former president Dorothy and former board member, Anton Zamachaj, ("Anton") and discovered that the unrepaired water leak had done substantial damage to the building.

61. Dorothy went to the home of a contractor across the street from the Club, and asked if he would come to the Club building and try to repair the leak.

62. The contractor, one Michael Sullivan, agreed to come and look at the problem. He cut open a section of wall on the second floor, discovered a detached roof drain pipe, and replaced and sealed a section of it, which took about two hours. Mr. Ostrander, Dorothy, and Anton observed the repair work. See Exhibit 2 picture attached.

63. Damage to the building from the water leakage included:

   A. The strip wood flooring in the large auditorium is buckled and cupped, as well as being moldy. The condition of the subfloor is unknown;

    B.    The ceiling in the bar area below the auditorium collapsed to the floor;

    C.    Bathroom ceilings in the bar area fell; and walls appear dislocated;

    D.    The wooden floor in the bar area is buckled:

    E.    Restaurant paper goods and the liquor inventory in the basement became damaged and moldy.

See Exhibit 3 pictures attached.

64. A licensed mold remediation company - ServPro - has determined that mold has covered nearly every surface in the building, and that the cost of removal would exceed $125,000, not including the heating ducts, which will cost tens of thousands of dollars more.

***Facts Regarding Failure to Control the Building and Missing Club Personalty and Inventory***

65. At the beginning of the Chapter 7 petition, the Club had:

    A.    Substantial liquor and food service inventory, in the basement and elsewhere;

    B.    A Massachusetts Lottery vending machine for scratch tickets;

    C.    Ample food preparation equipment, glass and silver ware, and soft goods;

    D.    Tables and chairs for the restaurant, bar and auditoriums.

    E.    Six televisions in the bar area, two computers, a point-of-sale system with hand wands, a cash register, and other electronic equipment.

    F.    Historical and financial records of the Club.

66. During the pendency of the bankruptcy, a number of persons associated with the Club had keys to enter it, and entry to the Club building was not adequately limited or controlled by Mr. Ostrander.

67. After Ostrander ended his titular control of the building in October of 2022, plaintiffs

herein were able to regain entry for the first time since the May, 2021 visit under the Superior Court action.

68. Upon inspection of the building, the plaintiffs observed the following items were missing:

   A. Substantial quantities of liquor;

   B. All scratch tickets from the Massachusetts Lottery vending machine;

   C. Items for food service, tablecloths, a large grease trap for the dishwasher (a thousand dollar item), pictures, wall decorations, and much else;

   D. Tables, chairs and bar stools.

   E. Three televisions, two computers, a cash register, and the wands for the point of sale system.

   F. All paper records stored in the Club, with an entire file cabinet emptied.

69. Through counsel, plaintiffs requested that Dorothy, Anton and Ostrander return the missing items to the Club. Dorothy's counsel responded, saying the items were "relocated", but would not agree to return them. The others made no response.

*Facts Regarding the Trustee Bond*

70. Defendant Liberty Mutual Insurance Company has issued a Blanket Trustee Bond, designated Bond #016227841, ("Bond"), in favor of all First Circuit Chapter 7 bankruptcy trustees, including defendant David Ostrander, effective August 1, 2022, in the cumulative amount of $40,000,000. See Exhibit 4 attached.

71. The Trustee Bond permits a judge to order the surety to pay the bankruptcy estate when a trustee fails to "faithfully and truly account for all moneys, assets and effects of the estate in each case in which he or she has been appointed or will be appointed, and shall in all

respects faithfully perform all his or her official duties as Trustee. . . ".

### Count I - Declaratory Judgment on the Trustee Bond

72. All of the averments in the proceeding paragraphs are hereby incorporated into this count.

73. Section 704 (a) (4) of the Bankruptcy Code requires the Trustee to be accountable for estate property.

74. The *Handbook for Chapter 7 Trustees* published by the U.S. Dept. Of Justice requires a trustee to insure any real property with equity value.

75. As set out in detail above, the trustee's failure to investigate and repair a known water leak caused substantial damage to the Club building and a massive mold buildup.

76. The Trustee did not insure the building during the pendency of the bankruptcy.

77. As a result of Ostrander's failure to oversee and insure the Club property, the Former Debtor will have to pay for extensive repairs to the Club Building, and pay for removal of mold, without benefit of insurance reimbursement, and the building is not usable until such repairs are made..

78. As a result of Ostrander's failure to secure the Club building, the Former Debtor suffered the loss of substantial inventory, equipment, liquor and food service goods necessary to running its business, without the benefit of insurance reimbursement to re-acquire these items.

79. As a result of Ostrander's failure to be accountable for the estate property, the Former Debtor has been unable to use the Club Building or to re-start its revenue-producing businesses in that building, following the July 18, 2022 dismissal of the petition, and has been damaged by lost revenue.

80. Section 704 (a) (2) of the Code requires the trustee to investigate financial affairs of the Debtor.

81. Section 3057 of Title 18 of the United States Code requires the trustee to report suspected violations of federal criminal law to the United States Attorney.

82. By continuing the Section 341 meeting several times, and excusing the Former Debtor's president from producing Club documents as ordered, and then adjourning the meeting without any investigation of the Former Debtor's finances, when there were credible allegations of fraud, conversion, mismanagement and possible criminal violations by the board and officers of the Former Debtor, the Trustee failed to "faithfully and truly account for all moneys, assets and effects of the estate in each case in which he or she has been appointed. . . "

83. This series of continuances of the Section 341 meeting is in violation of the requirements set out in The *Handbook for Chapter 7 Trustees* published by the U.S. Dept. Of Justice.

84. Trustee Ostrander never investigated these matters or required the officers or directors to produce evidence of how at least $70,000 of Club revenue had disappeared, how much was owed in taxes, and much else..

85. The Trustee did not file state and federal tax returns, employment tax returns, or meal tax returns, as required by Section 346 of the Code.

86. As a result of Ostrander's failure to investigate financial wrongdoing and to recoup money from the board and officers for operating expenses and to pay the necessary taxes of the Former Debtor, it is left liable for replacement of all of these funds, without benefit of insurance.

87. There is a substantial controversy between the parties, with adverse legal interest, of such

immediacy and existence so to warrant a declaratory judgment.

88. Therefore, the plaintiffs, in the name of The United States of America, requests that the court declare and order defendant Liberty Mutual Insurance Company to reimburse the Former Debtor for all forms of losses attributable to Mr. Ostrander, in amounts to be proven.

89. The plaintiffs also request that the court allow them an expedited procedure to obtain reimbursement on these claims, as time is of the essence, upon presenting detailed and credible evidence of causation and damage.

### Count II - Malpractice/Negligence

90. All of the averments in the proceeding paragraphs are hereby incorporated into this count.

91. The Trustee David Ostrander had a duty to the Former Debtor and to its creditors during the Chapter 7 proceeding to maintain the Club building in good condition, to insure it, to maintain control of estate personal property, and to limit access to the building.

92. Ostrander had a duty to the Former Debtor and its creditors to investigate credible allegations of theft, misuse of funds, self-dealing, and financial mismanagement by the board and officers of the Former Debtor during the Chapter 7 proceeding.

93. Ostrander breached that duty by failing to investigate and stop visible water leaks in the Club building in November of 2021 and April of 2022.

94. Ostrander breached that duty by failing to insure the Club building during the bankruptcy.

95. Ostrander breached that duty by failing to control entry and exit to the Club building during the bankruptcy.

96. Ostrander breached that duty by failing to investigate the credible allegations of theft,

misuse of funds, self-dealing, and financial mismanagement by the board and officers of the Former Debtor.

97. By these breaches, Ostrander failed to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession.

98. As a result of Ostrander's breach, the Club building was damaged physically, and in need substantial repairs and mold remediation as set out in detail above.

99. As a result of Ostrander's breach, the Club lost inventory, liquor, equipment, electronics, and other items set out above, which are needed to resume its revenue producing businesses, as set out above.

100. As a result of Ostrander's breach, the Former Debtor is not able to restart its business and is losing revenue needed to operate the Club building.

101. As a result of Ostrander's breach, there are no insurance funds available - except for payment on the Trustee Bond, from which to pay for these repairs and damage.

**Request For Relief**

WHEREFORE, the plaintiffs respectfully request the following relief:

A. An expedited order to the Trustee Bond surety, Liberty Mutual Insurance Company, to pay sums necessary to stabilize and make immediate emergency repairs and provide mold remediation to the Club building, upon motion and sworn proof of the scope and costs of such stabilization and repairs;

B. An order to the Trustee Bond surety, Liberty Mutual Insurance Company, to pay sums necessary to make any other repairs caused by the negligence of Trustee Ostrander while the Club building was under his control.

C. An order to the Trustee Bond surety, Liberty Mutual Insurance Company, to pay sums to the former debtor's estate for all items belonging to the estate which were removed permanently during the time the Club building was under Trustee Ostrander's control.

D. An order to the Trustee Bond surety, Liberty Mutual Insurance Company, to pay sums to the former debtor's estate for lost revenue due to the consequences of the negligence of the trustee during the Chapter 7 proceeding.

E. A money judgment/surcharge against Trustee Ostrander for negligence, gross negligence or malpractice, in amounts necessary to fully repair the damage caused to the Club building and pay for all estate property removed while it was under his control, and lost revenue, in whatever amounts are not covered by the Trustee Bond;

F. Attorneys fees and costs for bringing this action;

G. Any other relief as seems just.

**Plaintiffs claim the right to jury trial on any claims so triable.**

Respectfully submitted,
By Counsel,

/s/ Gregory Hession

Dated: December 14, 2022

_____
Gregory A. Hession J.D.
93 Summer Street
P.O. Box 543
Thorndike, MA 01079
Telephone (413) 289-9164
B.B.O. No. 564457
hession@crocker.com